**In the Matter of Hillard T. ROACH, a/k/a H. T. Roach, Debtor.**

**The FIRST NATIONAL BANK OF ANCHORAGE and Alaska Title Guaranty Company, Plaintiffs/Appellees,**

v.

**Hillard T. ROACH, Defendant/Appellant.**

**Civ. No. A 80–211.**

United States District Court, D. Alaska.

Sept. 9, 1980.

John Beard, Anchorage, Alaska, for plaintiffs-appellees.

A. Lee Peterson, Roger McShea, Anchorage, Alaska, for defendant-appellant.

## ORDER

FITZGERALD, District Judge.

Hillard T. Roach appeals a ruling of the bankruptcy court denying Roach's motion for relief from judgment and order invalidating sale. The First National Bank of Anchorage and Alaska Title Guaranty Company have moved to dismiss the appeal because of Roach's failure to timely file his brief. The bank's motion to dismiss the appeal as out of time is understandable in view of the course this litigation has taken in bankruptcy court and in the present proceedings.[1]

Although Roach's brief was not timely filed here, I have given it full consideration and in the interest of resolving this litigation have considered all issues properly raised or otherwise by this appeal.

Three contentions are made by the debtor.

(A) The bankruptcy court's denial of the debtor's motion for relief from judgment and order invalidating the sale was erroneous because the creditor, First National Bank of Anchorage, committed acts in violation of the automatic stay provided by Title 11 U.S.C. § 362.

The Bankruptcy Act provides that upon the filing of a petition under the Act, a stay is imposed against the commencement or continuation of all proceedings against the debtor including, among other things, any act to create, perfect, or enforce any lien against property of the estate; any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; and any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

---

1. The dilatory tactics of the debtor are chronicled in the findings 5 and 6 of the bankruptcy court.

The bankruptcy court held its preliminary hearing on March 25 and 28 of 1980. Evidence at the preliminary hearing established that in 1976 Roach obtained a bank loan from the First National Bank of Anchorage for $253,000. The loan was secured by a deed of trust and the purpose of the loan was to complete the development of a subdivision close by Palmer, Alaska, on land owned by Roach. To date Roach has made no payments of either principal or interest on the loan. The trustee of the deed of trust has on three occasions sought to obtain foreclosure. Roach has been able to frustrate each attempt through court proceedings. On the third occasion Roach filed a Title 11 proceedings in bankruptcy court on the day scheduled for sale.

■ Roach now complains that the bank and the trustee under the deed of trust have rescheduled the sale at least three times and this conduct constitutes an act to enforce a lien against property of the estate. In other words, Roach's complaint is that a continuance of sale after the stay was imposed by the bankruptcy court amounts to action to enforce a lien under 11 U.S.C. § 362(a).

■ Necessarily, the bank and trustee had no alternative but to continue the foreclosure sale when the Title 11 proceedings was filed. The continuance of the sale maintained the status quo until such time as the bankruptcy judge should act in the matter. Roach seems to think that the filing of the Title 11 proceedings should have effected a termination of the sale requiring the bank and trustee to begin anew. However, I conclude that continuation of the sale was made necessary by the filing of the Title 11 proceedings and was effective to stay efforts to enforce the lien until the bankruptcy judge was able to act in the matter. The Bankruptcy Act does not require nor imply that summary foreclosure be terminated upon the filing of a Title 11 so as to require the secured creditor to begin anew at such time as the bankruptcy court may permit. Roach's contention in this respect amounts to nothing more than a play on words without substance. The continuance of sale by the trustee does not offend the Bankruptcy Act.

■ (B) Roach contends that the judgment and order for relief from stay entered by the bankruptcy court on April 21, 1980 was clearly erroneous because the bank failed to bear the burden of proof required by it by statute (11 U.S.C. 362(g).

In his findings of fact the bankruptcy judge determined that Roach owed the First National Bank of Anchorage in excess of $365,000. Roach's obligation to the bank is subordinate to a state court judgment in excess of $132,000 due Schackle Excavating and to a mechanics lien totalling $29,500 due M. W. Drilling and Wayne Westbert. The bankruptcy judge found that the value of the real property secured by the deed of trust to be no more than $480,000, a sum substantially less than the total amount due the creditors holding valid liens against the property. In arriving at his findings the bankruptcy judge accepted the testimony of Timothy R. Lowe who was qualified before the court as an expert in real estate appraisal. Lowe made an on-site and aerial inspection of the property and confirmed that the highest and best use of the property would be to develop the land into lots containing a minimum of 40,000 square feet. Utilizing the comparable sale approach, Lowe appraised the value of the land at $320,000 to $480,000. Alternatively, by applying the development cost approach to value, Lowe estimated the maximum value of the land at $250,000. The bankruptcy judge found the land to be worth $480,000, the highest amount of Mr. Lowe's appraisal.

It is true that at one time the First National Bank in order to complete the subdivision offered to increase the loan to Roach up to $500,000. But at trial a bank official testified that the maximum amount the bank would be able to offer for the property at sale was now $325,000 in view of Lowe's appraisal. The bank's position on its trust deed is subordinate to valid liens of $155,000 and the total investment by the bank could not exceed the amount of Lowe's appraisal of $480,000. Otherwise the bank would become a land speculator rather than a lending institution.

In his testimony Roach expressed his opinion that if the lots in the subdivision were to be completed and the plat approved, the lots would each be worth $17,500 and up. Mr. Worledge of the Alaska Bank of Commerce testified that he believed that if the debtor's subdivision was completed the lots would be each worth from $16,350 to $17,500. However, Worledge also testified that the Alaska Bank of Commerce had repeatedly refused the debtor's request to refinance the project and within the month had refused to loan Roach $140,000 to complete the subdivision.

■ Although Roach has been trying to complete the subdivision since obtaining the bank loan in 1976, it is still far from completion. The valid liens against the property include well drilling costs for a public water system and the judgment of the contractor who installed the water distribution system. Additionally engineers and lawyers remain unpaid. The roads are not yet completed in the subdivision and the plat has not yet been approved by public authority. In these circumstances it can be only concluded that the bankruptcy judge was justified in accepting the testimony of Lowe on valuation. In reviewing the findings of the bankruptcy judge the "clearly erroneous" standard of review must be applied giving great weight to the bankruptcy judge's determination of credibility. *Matter of Nelson*, 561 F.2d 1342, 1347–48 (9th Cir. 1977); *In Re Taylor*, 514 F.2d 1370, 1373–74 (9th Cir. 1975). There was no error.

(C) The bankruptcy court erred in denying the debtor's motion for a new trial.

■ In support of the motion for a new trial it is said the debtor was to furnish additional information about the possibility of an effective arrangement. The debtor states that his lack of rapport with his counsel at the time of the hearing and the court's refusal to allow him to change counsel or to represent himself precluded him from presenting all available information at the hearing before the bankruptcy judge. The veiled suggestion is that James Johnson, the attorney who represented Roach at

that time, failed to adequately represent his client. My examination of the transcript reveals otherwise. Johnson exhaustively and relentlessly cross-examined Lowe and offered Roach as a witness. Roach was permitted to testify fully and in my view Johnson presented Roach's testimony in the best light possible. The bankruptcy judge continued the proceedings to meet the debtor's convenience. Under these circumstances, the suggestion that the bankruptcy judge was in error in denying a new trial is nonsense.

I conclude that there is no merit to this appeal. Accordingly, the final order of the bankruptcy court is AFFIRMED.